**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| THE FUND FOR ANIMALS *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 03-0677 (RMU) |
| | : | | |
| v. | : | Document No.: | 35 |
| | : | | |
| STEVEN WILLIAMS *et al.*, | : | | |
| | : | | |
| Defendants, | : | | |
| | : | | |
| and | : | | |
| | : | | |
| THE U.S. SPORTSMEN'S ALLIANCE FOUNDATION *et al.*, | : | | |
| | : | | |
| Defendant-Intervenors, | : | | |

**MEMORANDUM OPINION**

GRANTING DEFENDANTS AND DEFENDANT-INTERVENORS' MOTION FOR PARTIAL DISMISSAL

**I. INTRODUCTION**

This case comes before the court on the defendants and defendant-intervenors' motion for partial dismissal. The plaintiffs allege that the Fish and Wildlife Service (the "FWS") violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321, *et. seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, by not preparing an Environmental Impact Statement ("EIS") or an Environmental Assessment ("EA") prior to publishing its goals in the 2000-2005 Strategic Plan (the "Strategic Plan" or the "Plan") and prior to issuing six final

agency rules[1] initiating or expanding sport hunting in various National Wildlife Refuges. Compl. ¶¶ 106, 109.  The defendants and defendant-intervenors have moved for the dismissal of the plaintiff's challenge to the Strategic Plan.  Because the goal announced in the 2000-2005 Strategic Plan does not constitute a final agency action under the APA, the court concludes that it lacks subject-matter jurisdiction to review the Strategic Plan and grants the defendants' and defendant-intervenors' motion for partial dismissal.  The court further concludes that the plaintiffs' still-pending motion to compel production and/or supplementation of the full administrative record is only partially moot.  Accordingly, the court will consider the motion to compel in a separate memorandum opinion.

## II.  BACKGROUND

### A.  Factual Background

First established by President Theodore Roosevelt in 1903, the National Wildlife Refuge System (the "Refuge System") consists of over 500 wildlife refuges, with locations in all fifty states.  Compl. ¶ 81; Defendants and Defendant-Intervenors' Motion for Partial Dismissal ("Defs.' Mot.") at 3.  Congress designed the Refuge System to "administer a national network of

---

[1] Between 1997 and 2002, the Fish and Wildlife Service (the "FWS") issued six final rules creating or expanding recreational hunting opportunities at numerous wildlife refuges.  Compl. ¶ 99; Defendants and Defendant-Intervenors' Motion for Partial Dismissal ("Defs.' Mot.") at 5-6; *see also* 67 Fed. Reg. 58936 (Sept. 18, 2002); 66 Fed. Reg. 46346 (Sept. 4, 2001); 65 Fed. Reg. 56396 (Sept. 18, 2000); 65 Fed. Reg. 30771 (May 12, 2000); 63 Fed. Reg. 46910, 46912 (Sept. 3, 1998); 62 Fed. Reg. 47372, 47374 (Sept. 9, 1997).  The FWS admits that it did not prepare an Environmental Impact Statement ("EIS") or an Environmental Assessment ("EA") prior to the publication of the six final rules. Ans. ¶ 103.  But, the FWS denies that it did not prepare EAs prior to the actual opening or expansions of refuges.  *Id.*  The FWS claims to have invoked a categorical exclusion for the publication of the final rules.  *Id.*

lands and waters for the conservation, management, and where appropriate, restoration of fish, wildlife, and plant resources and their habitats within the United States for the benefit of present and future generations of Americans." Compl. ¶ 83 (citing 16 U.S.C. § 668dd(a)).

Since the refuge system's inception, Congress has gradually authorized the practice of recreational activities in the refuges, including sport hunting. Compl. ¶ 85; Defs.' Mot. at 3. Congress has simultaneously attempted to mitigate the detrimental effects of increased recreational use of the refuges. For example, in 1997, Congress enacted the National Wildlife Refuge Improvement Act, to "ensure that opportunities are provided within the System for compatible wildlife dependent recreation," including "fishing and hunting." Defs.' Mot. at 4 (citing 16 U.S.C. § 668dd(a)(3)-(4)). At the same time, however, the FWS must still "provid[e] for the conservation of fish, wildlife, plants, and their habitats," "monitor[] the status and trends of fish, wildlife, and plants in each refuge," and "ensure[] the biological integrity, diversity, and environmental health of the system." 16 U.S.C. § 668dd(a)(3)-(4); Compl. ¶ 97.

To ensure compliance with the 1997 Act, the FWS reviews its recreational programs annually to determine whether to maintain, diminish, or expand opportunities for activities such as hunting and fishing. Defs.' Mot.. at 5. Before opening a refuge to recreational hunting, the FWS develops a proposed hunting plan, which involves the development of refuge-specific regulations to ensure compatibility. But, ultimately, it is the individual refuges that make the determination as to whether or not to allow hunting or fishing on their grounds. *Id.* (citing 67 Fed. Reg. 58936, 58936).

### B. Procedural History

The Fund for Animals (the "Fund") is a national nonprofit membership organization dedicated to "preserving animal and plant species in their natural habitats and . . . preventing the abuse and exploitation of wild and domestic animals." Compl. ¶ 3. The Fund initiated this action on its own behalf and on behalf of its members, who regularly engage in educational, recreational and scientific activities on and near national wildlife refuges. *Id.* ¶ 5. The plaintiffs oppose the FWS's decision to initiate and expand hunting in the refuges, contending that, "[t]he introduction and expansion of sport hunting "interferes with and diminishes the Fund's members' use and enjoyment of these refuges." *Id.*

After the Fund filed this action, the parties "engaged in over two years of negotiations concerning potential settlement of the case and production of the Administrative Record." Pls.' Opp'n to Defs. and Def.-Intervenors' Mot. for Partial Dismissal ("Pls.' Opp'n") at 9. The parties' two years of negotiations ultimately failed, and the plaintiffs filed a motion to compel production and/or supplementation of the full administrative record ("motion to compel"), claiming that the defendants refused to produce (1) records pertaining to the announcement of goals in the Strategic Plan and (2) four documents that the plaintiffs allege are relevant to agency decisions creating or expanding hunting opportunities. *Id.*

In March 2005, the defendants, instead of responding to the plaintiffs' motion to compel, filed a motion for partial dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See generally* Defs' Mot. The defendants seek dismissal of the plaintiffs' challenge to the publication of goals in the Strategic Plan. *Id.* The defendants also claim that a partial dismissal will render the motion to compel moot. The court now turns to the defendants' motion

for partial dismissal.

### III. ANALYSIS

#### A. Statutory Background

#### 1. The National Environmental Policy Act

The NEPA requires government agencies to prepare an EIS for "every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment" Compl. ¶ 74 (citing 42 U.S.C. § 4332(C)). The EIS must examine the short- and long-term "'environmental impact of the proposed action' and identify any possible alternative plans." *Id.* (citing 42 U.S.C. § 4332(C)). If the proposed action does not have a significant effect on the environment, it is classified as a "categorical exclusion," and the agency is not required to prepare an EIS. *Id.* ¶ 75; 40 C.F.R. § 1508.4. If an action is neither a "major federal action" nor a "categorical exclusion," the agency must prepare an EA to determine whether an EIS is necessary. *Id.* ¶ 76 (citing 40 C.F.R. § 1501.4). The EA must "provide sufficient evidence and analysis for determining whether" a proposed action will significantly affect the environment, thus requiring an EIS. 40 C.F.R. § 1508.9; Compl. ¶ 76. If, after preparing the EA, the agency decides not to prepare an EIS, it must issue a "finding of no significant impact ("FONSI") to justify its decision not to prepare an EIS." Compl. ¶ 77 (citing 40 C.F.R. § 1508.13). The FONSI must demonstrate why the action will not significantly impact the environment. *Id.*

## 2. The Government Performance and Results Act

Congress enacted the Government Performance and Results Act of 1993 (the "GPRA"), Pub. L. 103-62, 107 Stat. 285 (codified in sections of Titles 5, 31, and 39 of the U.S. Code), to combat waste and inefficiency in federal programs. Defs.' Mot. at 6 (citing 31 U.S.C. § 1115). Under the GPRA, each agency must prepare a Strategic Plan that addresses its goals and projects its activities over a five-year period. *Id.* at 7. The Strategic Plan must include a comprehensive mission statement, general goals and objectives and a description of how the goals and objectives are to be achieved. *Id.* In addition, each agency must prepare annual performance plans to cover each program activity included in the agency's budget and annual performance reports that indicate whether the agency accomplished its goals. *Id.* (citing 31 U.S.C. § 1115). The agency submits its Strategic Plan to Congress and the Director of the Office of Management and Budget to allow for both congressional and executive oversight of agency performance and efficiency. *Id.* (citing 5 U.S.C. § 306).

The FWS 2000-2005 Strategic Plan identifies fourteen long-term goals for the agency. With regard to recreational use[2] of refuges, the FWS projected that, "[b]y 2005, compatible, wildlife-dependent recreational visits to National Wildlife Refuges and National Fish Hatcheries [will] have increased by 20 percent from the 1997 levels." *Id.* at 9 (citing Strategic Plan at 43). The defendants prepared neither an EIS nor an EA prior to submitting the Strategic Plan. Compl. ¶ 109.

---

[2] In the Strategic Plan, the FWS adopts the definition of "recreational use" contained in the 1997 Improvement Act. Thus, "recreational use" includes wildlife photography, fishing, hunting, wildlife observation, environmental education, and interpretation. Defs.' Mot, Ex. 1 at 44.

### B. The Court Lacks Subject-Matter Jurisdiction
### to Address Challenges to the Strategic Plan[3]

The defendants allege that the court lacks subject matter jurisdiction under the APA because the announcement of goals in the GPRA-mandated Strategic Plan is not a final agency action. Defs.' Mot. at 3. The plaintiffs, on the other hand, argue that the Strategic Plan constitutes a final agency action requiring judicial review.

### 1. Legal Standard for Judicial Review of Agency Actions

Judicial review of agency actions under NEPA is governed by the APA. *Tulare County v. Bush*, 306 F.3d 1138, 1143 (D.C. Cir. 2002). The APA entitles "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . to judicial review thereof." 5 U.S.C. § 702. Under the APA, a reviewing court must set aside an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706; *Tourus Records, Inc. v. Drug Enforcement Admin.*, 259 F.3d 731, 736 (D.C. Cir. 2001). In making this inquiry, the reviewing court "must consider whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 378 (1989) (internal

---

[3] As an initial matter, the plaintiffs urge the court to grant their motion to compel before resolving the defendants' motion to dismiss. The plaintiffs allege that the records at issue would assist the court in determining whether it has subject-matter jurisdiction over the plaintiffs' claim. Pls.' Opp'n to Defs.' and Def.-Intervenors' Mot. for Partial Dismissal ("Pls.' Opp'n") at 12. But, the administrative record will not shed any light on the legal issue at hand: whether the goal stated by the defendants in the Strategic Plan constitutes a final agency action for purposes of the Administrative Procedures Act (the "APA"). Courts are not required to consider the administrative record pertaining to a challenged action when deciding whether it has subject matter jurisdiction. *See San Juan Audubon Soc'y v. Veneman*, 153 F.Supp. 2d 1, 5 (D.D.C. 2001) (noting that, "the court *may* consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction in the case") (citing *Scolavo v. D.C. Bd. of Elections & Ethics*, 104 F.Supp. 2d 18, 22 (D.D.C. 2000)) (emphasis added). Accordingly, the court declines to address the plaintiffs' motion to compel prior to resolving the current motion for partial dismissal.

quotations omitted).  At a minimum, the agency must have considered relevant data and articulated an explanation establishing a "rational connection between the facts found and the choice made."  *Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610, 626 (1986); *Tourus Records*, 259 F.3d at 736.  An agency action usually is arbitrary or capricious if

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Veh. Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see also County of L.A. v. Shalala*, 192 F.3d 1005, 1021 (D.C. Cir. 1999) (explaining that "'[w]here the agency has failed to provide a reasoned explanation, or where the record belies the agency's conclusion, [the court] must undo its action.'").

As the Supreme Court has explained, however, "the scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency."  *Motor Veh. Mfrs. Ass'n*, 463 U.S. at 43.  Rather, the agency action under review is "entitled to a presumption of regularity."  *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

Generally, for a court to have jurisdiction over claims seeking judicial review of an agency action under the APA, it must determine that the action is final.  *Cobell v. Norton*, 240 F.3d 1081, 1095 (D.C. Cir. 2001); *see also Ticor Title Ins. Co. v. Fed.Trade Comm'n*, 814 F.2d 731, 746 n.2 (D.C. Cir. 1987) (noting that the finality requirement also applies to "agency action made reviewable by statute").  A final agency action "(1) 'marks the consummation of the agency's decision making process – it must not be of a merely tentative or interlocutory nature';

and (2) the action 'must be one by which rights or obligations have been determined or from which legal consequences will flow.'" *Domestic Secs. v. Secs. & Exch. Comm'n*, 333 F.3d. 239, 246 (D.C. Cir. 2003) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)).  A court therefore must consider "whether the agency's position is definitive and whether it has a direct and immediate effect on the day-to-day business of the parties."  *Index. Petroleum Ass'n of Am. v. Babbitt*, 235 F.3d 588, 595-96 (D.C. Cir. 2001).

**2. The Announcement of Goals in the Strategic Plan is not a "Final Agency Action"**

Contrary to the plaintiff's argument, the Strategic Plan does not constitute a judicially reviewable final action.  First, the Strategic Plan requires additional steps for implementation.  Second, the Strategic Plan does not create any binding obligations.  These two factors are described in turn below.

**a. The Strategic Plan Requires Additional Steps for Implementation**

The plaintiffs' primary argument is that the Strategic Plan is a final agency action because "it is already being applied," signifying that the agency's decisionmaking process is at an end.  Pl.'s Opp'n at 30-31.  Although the publication of a long-term goal in a Strategic Plan indicates that one decisionmaking process has concluded (*i.e.*, the process of formulating the goal and possible strategies for achieving it), it does not constitute a final agency action because implementation of the goals announced in it entails "subsequent discretionary actions requiring separate and independent decisionmaking that are divorced from the prior decision."  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 893 (1990); *see also Fund for Animals v. Bureau of Land Mgmt.*, 357 F.Supp. 2d 225, 229 (D.D.C. 2004) (holding that, because implementation of challenged goals requires further agency decisionmaking, the announcement of the goals in a

Bureau of Land Management Restoration Strategy is not a final agency action).[4]

Nothing in the Strategic Plan immediately authorizes the opening or expansion of wildlife refuges to recreational use. Decisions to open or expand hunting opportunities occur at the level of the individual refuge. Defs.' Mot. at 14. Prior to making a decision, regional agency officials must (1) prepare a management plan for the particular refuge, (2) issue a NEPA-mandated EIS or an EA, (3) conduct a Section 7 Endangered Species Act evaluation, and (4) draft refuge-specific regulations. Defs. and Def.-Intervenors' Reply to Pls.' Opp'n ("Defs.' Reply") at 8 (citing 67 Fed. Reg. 58936, 58937 (Sept. 18, 2002)). Because the announcement of the goal in the strategic plan has no "direct and immediate effect on the day-to-day business of those regulated," it is not a final agency action. *See, e.g., Abbott Labs. v. Gardner*, 387 U.S. 136, 150, 152 (1967) (holding that a pharmaceutical regulation is a final agency action because it affects the day-to-day business of the regulated industry and the agency has direct authority to enforce it); *see also Nat'l Ass'n of Homebuilders v. Norton*, 298 F.Supp. 2d 68, 78 (D.D.C. 2003) (explaining that an Environmental Protection Agency ("EPA") Guidance regarding permits is a final agency action because it "has legal consequences both for state agencies administering the permit programs and for companies who must obtain permits in order to continue operating") (citing *Appalachian Power Co. v. Envtl. Prot. Agency*, 208 F.3d 1015, 1023 (D.C. Cir. 2000)).

---

[4] The plaintiffs also argue that the publication of a goal in the Strategic Plan constitutes final agency action because it represents the agency's "interpretation" of the 1997 Amendments to the National Wildlife Administration Act. Pls.' Opp'n at 32. Although the interpretation of new law is in one sense the culmination of an agency's decisionmaking process, the individual refuges must go through their own deliberation and decisionmaking process before expanding or creating new hunting opportunities. Because an additional deliberation and decisionmaking must occur before the creation or expansion of recreational hunting opportunities can occur at any individual refuge, the interpretation of the amendments is not a final agency action under the APA. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 893 (1990).

### b.  The Strategic Plan Does not Create a Binding Obligation

The plaintiffs also argue that the Strategic Plan is a final agency action because the goals published within it obligate refuge managers to expand opportunities for recreational hunting in individual refuges.  Pls.' Opp'n at 31-32.  An agency decision is final if the agency publicizes it expecting compliance from those who are regulated.  In other words, an action is final if it creates a binding obligation.  *Bennett,* 520 U.S. at 158 (holding that a Biological Opinion issued by the EPA is a final agency action because it sets out mandatory terms and conditions for the agency to use when implementing a plan); *Appalachian Power Co.*, 208 F.3d at 1021 (D.C. Cir. 2000) (concluding that a document issued by an agency can be a "final agency action" if the agency "acts as if it is controlling in the field, bases enforcement actions on the policies or interpretations in the document, and leads private parties to believe that they must comply with it");  *see also Reliable Automatic Sprinkler Co., Inc. v. Consumer Prod. Safety Comm.*, 324 F.3d 726 (D.C. Cir. 2003) (holding that an agency letter requesting voluntary compliance has no legal effect and therefore is not a final agency action).

Although the Strategic Plan guides the issuance of future regulations, the individual refuges maintain discretionary authority over openings or expansions of hunting opportunities.  Defs.' Mot. at 14.  It is the responsibility of the personnel of each refuge to "ensure the continued compatibility of hunting and fishing programs and that these programs will not materially interfere with or detract from the fulfillment of the purposes of the refuge or the [National Wildlife Refuge] System's mission."  Defs.' Reply at 8 (citing 67 Fed. Reg. 58936 (Sept. 18, 2002)).  In other words, the agency framework requires site-specific decisions creating or increasing opportunities for recreational hunting or fishing, and an individual refuge is still free

to conclude that an increase in recreational use is not feasible because of potential deleterious effects. *See* 16 U.S.C. § 668dd(a)(3)-(4); Fed. Reg. 58936, 58936 (Sept. 18, 2002). Because the published goal in the Strategic Plan does not create a binding obligation on refuge managers to open refuges to hunting, it is not a final agency action.[5]

In sum, the FWS' publication of the Strategic Plan is not a final agency action because it does not mandate the creation or expansion of hunting opportunities and has no direct effect on those regulated. Because actual implementation of the goals announced in the Strategic Plan occurs at a subsequent stage of decisionmaking, judicial review of the Plan would prematurely interfere with the agency's decisionmaking process and would improperly substitute the court's discretion for that of the agency. *See Lujan,* 497 U.S. at 893 (stating that the flaws in a program "cannot be laid before the courts for wholesale correction under the APA, simply because one of them that is ripe for review adversely affects" a party before the court). Accordingly, the court

---

[5] The plaintiffs make much of the Ninth Circuit's dictum in *Ohio Forestry Association*. *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726,734 (1998). To challenge a plan in the Ninth Circuit, a plaintiff must allege "either (1) imminent concrete injuries that would be caused by the plan or (2) a site-specific injury causally related to an alleged defect in the . . .plan." *Wilderness Soc'y v. Thomas*, 188 F.3d 1130, 1133-34 (9th Cir. 1999). The court notes that the D.C. Circuit has never explicitly adopted the Ninth Circuit's approach. Even under the Ninth Circuit methodology, however, the Strategic Plan itself causes no imminent concrete injuries because a separate decisionmaking process must occur before the creation or expansion of refuge-specific hunting opportunities. *Id.* The same intervening decisionmaking process also undermines any claim that inappropriate site-specific hunting decisions are directly, or causally related to the Strategic Plan itself.

The plaintiffs also misapply the holding of *Kern v. Bureau of Land Management*, 284 F.3d 1062, 1066 (9th Cir. 2002). The plaintiffs describe the holding of *Kern* as "permitting review of an agency guidance document once it was applied on-the-ground by the agency" Pls.' Opp'n at 35-36. The plaintiffs in *Kern*, however, challenged site-specific NEPA documents, not the guidelines that provided the background for individual decisions. *See Kern*, 284 F.3d at 1066. *Kern*, therefore, is entirely consistent with today's ruling, which will still allow the plaintiffs to challenge any improper use of the Strategic Plan by the FWS in issuing the six final regulations still at issue in this case.

lacks jurisdiction to review the Plan under the APA.[6]

### C. The Plaintiffs' Motion to Compel is Only Partially Moot

The resolution of the instant motion does not render the plaintiffs' pending motion to compel entirely moot. The plaintiffs urge the court to order the supplementation of the administrative record because they intend to challenge the six final agency rules that are still at issue in this case and because the court's review of those six final agency rules "should be based on the 'whole' [a]dministrative [r]ecord." Pls.' Opp'n at 11 (citing *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984) (concluding that a court reviewing agency action under the APA should consider all "the materials that were before the [agency] at the time its decision was made"). The plaintiffs allege that there are four specific documents (including the Plan itself) relevant to the FWS's decisionmaking process that the defendant has refused to include in the record. Mot. to Compel at 3. Therefore, the motion to compel is still viable even though the Plan itself is not reviewable.[7]

---

[6] Because the court lacks subject matter jurisdiction to address the plaintiffs' challenge to the Strategic Plan, it will not evaluate the sufficiency of the defendants' arguments made under Rule 12(b)(6). The issue of whether the defendants' Rule 12(b)(6) motion should convert to a Rule 12(c) motion for judgment on the pleadings is also moot. *See* Pls.' Opp'n at 14; Defs. and Def.-Intervenors' Reply to Pls.' Opp'n ("Defs.' Reply") at 4.

[7] Any future submissions must comply with the page limits set forth in the Standing Order and other previous Orders of the court in this case. Both parties have improperly disregarded mandatory page limits. *See, e.g.,* Pls.' Opp'n at 13 n.2. The court will not tolerate any future transgressions of this kind, and it refuses to assume the role of watchdog in disputes over such lilliputian matters.

## IV.  CONCLUSION

For the foregoing reasons, the court grants the defendants and defendant-intervenors' motion to dismiss the plaintiffs' challenge to the publication of goals in the FWS Strategic Plan. The court additionally rules that the resolution of this motion does not render the plaintiffs' motion to compel moot.  The court will address the plaintiffs' motion to compel in a forthcoming opinion.  An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this 26th day of September, 2005.

RICARDO M. URBINA
United States District Judge