# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

THE FUND FOR ANIMALS *et al.*,      :
      :
      Plaintiffs,    :    Civil Action No.:    03-0677 (RMU)
      :
      v.    :    Document No.:    31
      :
STEVEN WILLIAMS *et al.*,    :
      :
      Defendants,    :
      :
and    :
      :
THE U.S. SPORTSMEN'S ALLIANCE    :
FOUNDATION *et al.*,    :
      :
      Defendant-    :
      Intervenors,    :

## MEMORANDUM OPINION

### Granting In Part and Denying In Part the Plaintiffs' Motion to Compel Production and/or Supplementation of the Administrative Record

## I. INTRODUCTION

This case comes before the court on the plaintiffs' motion to compel production and/or supplementation of the administrative record. The plaintiffs allege that the defendant Fish and Wildlife Service (the "FWS" or the "Service") failed to produce the administrative record pertaining to (1) the 2000-2005 Strategic Plan prepared by the FWS pursuant to the Government Performance and Results Act (the "GPRA") and (2) six final agency rules creating or expanding recreational hunting opportunities at numerous National Wildlife Refuges. Because this court has already concluded in a prior memorandum opinion that the announcement of long-term

1

agency goals in a Strategic Plan is not a reviewable action under the Administrative Procedure

Act (the "APA"), the portion of the plaintiffs' motion to compel production or supplementation

of the administrative record pertaining to the Strategic Plan is moot.  Because the plaintiffs are

making a procedural challenge under the National Environmental Policy Act ("NEPA") and have

demonstrated that the defendants excluded pertinent documents adverse to the agency's position

from the record, the court grants the plaintiffs' motion to supplement the record with the four

documents requested by the plaintiffs.


## II.  BACKGROUND

### A.  Factual Background

The current motion marks the latest round in the parties' battle over the legitimacy of

recreational hunting in National Wildlife Refuges.  In 1999, as required by the GPRA, the FWS

issued its 2000-2005 Strategic Plan outlining fourteen long-term goals for the agency, including a

twenty percent increase in wildlife-dependent recreational visits to refuges nationwide by 2005.[1]

Defs.' and Defendant-Intervenors' Mot. for Partial Dismissal ("Defs.' Mot.") at 9.  In addition,

between 1997 and 2002 the FWS issued six final rules creating or expanding recreational hunting

opportunities at numerous refuges.  Compl. ¶ 99; Defs.' Mot. at 5-6; *see also* 67 Fed. Reg. 58936

(Sept. 18, 2002); 66 Fed. Reg. 46346 (Sept. 4, 2001); 65 Fed. Reg. 56396 (Sept. 18, 2000); 65

Fed. Reg. 30771 (May 12, 2000); 63 Fed. Reg. 46910, 46912 (Sept. 3, 1998); 62 Fed. Reg.

---

[1]     Under the Government Performance and Results Act of 1993 (the "GPRA"), each agency must prepare a Strategic Plan that addresses its goals and projects its activities over a five-year period. Defs.' and Defendant-Intervenors' Mot. for Partial Dismissal ("Defs.' Mot.") at 7.  The Strategic Plan must include a comprehensive mission statement, general goals and objectives, and a description of how the goals and objectives are to be achieved.  *Id.*

47372, 47374 (Sept. 9, 1997).

The Fund for Animals ("the Fund"), is a national nonprofit membership organization dedicated to "preserving animal and plant species in their natural habitats and . . . preventing the abuse and exploitation of wild and domestic animals." Compl. ¶ 3. The plaintiffs oppose the FWS' alleged decision to initiate and expand hunting in several National Wildlife Refuges. *Id.* ¶ 5. The Fund and its individual members allege that, by publishing its goal to increase recreational use of National Wildlife Refuges in the Strategic Plan and by promulgating the six final rules expanding hunting opportunities, the defendants have violated the plaintiffs' procedural rights under NEPA.[2] *Id.* ¶¶ 12, 16, 19, 22, 25, 28, 31, 34, 37, 39, 42, 46, 50, 53, 57, 60, 63, 66, 70. Specifically, the plaintiffs allege that the defendants were required, pursuant to NEPA, to prepare an Environmental Impact Statement ("EIS") prior to issuing the six final rules. The defendants argue that such documentation was not required. Ans. ¶¶ 103, 105.

---

[2]     The National Environmental Policy Act ("NEPA") requires government agencies to prepare an Environmental Impact Statement ("EIS") for "every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment . . ." Compl. ¶ 74 (citing 42 U.S.C. § 4332(C)). The EIS must examine the short- and long-term "'enivronmental impact of the proposed action and identify any possible alternative plans.'" *Id.* If the proposed action does not have a significant effect on the environment, it is classified as a "categorical exclusion," and the agency is not required to prepare an EIS. *Id.* ¶ 75; 40 C.F.R. § 1508.4. If an action is neither a "major federal action" nor a "categorical exclusion," the agency must prepare an Environmental Assessment ("EA") to determine whether an EIS is necessary. *Id.* ¶ 76 (citing 40 C.F.R. § 1501.4). The EA must "provide sufficient evidence and analysis for determining whether" a proposed action will significantly affect the environment, thus requiring an EIS. 40 C.F.R. § 1508.9; Compl. ¶ 76. If, after preparing the EA, the agency decides not to prepare an EIS, it must issue a "finding of no significant impact ("FONSI") to justify its decision not to prepare an EIS." Compl. ¶ 77 (citing 40 C.F.R. § 1508.13). The FONSI must demonstrate why the action will not significantly impact the environment. *Id.*

### B.  Procedural Background

After two years of failed negotiations between the parties, the plaintiffs filed the current motion to compel production and/or supplementation of the administrative record ("Pls.' Mot. to Compel").  The plaintiffs claim that the administrative record should include documents pertaining to the announcement of goals in the Strategic Plan, as well as (1) a Government Accounting Office ("GAO") report entitled *National Wildlife Refuges: Continuing Problems with Incompatible Uses Call for Bold Action*, (2) a draft EIS, *Refuges 2003: A Plan for the Future*, (3) *Biological Needs Assessment: National Wildlife Refuge Division of Refuges*, (4) and FWS's *Strategic Plan 2000-2005*.  Pls.' Mot. to Compel at 2-3.

In March 2005, the defendants, instead of responding to the plaintiffs' motion to compel, filed a motion for partial dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) seeking dismissal of the challenge to the 2000-2005 Strategic Plan.  *See* Defs' Mot. Because the court concluded that it lacked subject-matter jurisdiction to review the Strategic Plan, the court concluded that the portion of the plaintiff's motion to compel records pertaining to the Strategic Plan was moot.  Mem. Op. Granting Defs.' and Defendant-Intervenors' Mot. for Partial Dismissal ("Mem. Op.") at 12-13.  The resolution of the defendants' motion for partial dismissal, however, did not render the plaintiffs' motion to compel moot with respect to the four documents listed *supra*.  Mem. Op. at 13.  The court now turns to the motion to compel.[3]

---

[3]     Although the defendants never filed an opposition to the plaintiffs' motion, the defendants and defendant-intervenors included arguments pertaining to the motion to compel in their motion for partial dismissal and in their reply to the plaintiffs' opposition to the motion for partial dismissal.  *See* Defs.' Mot. at 24-25; Defs.' and Defendant-Intervenors' Reply to Pls.' Opp'n ("Defs.'Reply") at 16-18.

## III. ANALYSIS

### A. Legal Standard for a Full Administrative Record Under Section 706 of the APA

Judicial review of agency actions under NEPA is governed by the APA. *Tulare County v. Bush*, 306 F.3d 1138, 1143 (D.C. Cir. 2002). Section 706 of the APA directs a court evaluating an agency action to "review the whole record or those parts of it cited by a party." 5 U.S.C. § 706; *Ctr. For Auto Safety v. Fed. Highway Admin.*, 956 F.2d 309, 314 (D.C. Cir. 1992); *Natural Res. Def. Council, Inc. V. Train*, 519 F.2d 287, 291 (D.C. Cir. 1975). The court's review must "be based on the full administrative record that was before the [agency] at the time [it] made [its] decision." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977); *Am. Bioscience, Inc. v. Thompson*, 243 F.3d 579, 582 (D.C. Cir. 2001).

Because the court's review is confined to the administrative record at the time of the agency's decision, it may not include "some new record made initially in the reviewing court."[4] *Ctr. for Auto Safety*, 956 F.2d at 314 (citing *Camp v. Pitts*, 411 U.S. 138, 142 (1973)); *Texas Rural Legal Aid, Inc. v. Legal Servs. Corp.*, 940 F.2d 685, 698 (D.C. Cir. 1991). To ensure fair review of an agency action, therefore, the court "should have before it neither more nor less information than did the agency when it made its decision." *IMS, P.C. v. Alvarez*, 129 F.3d 618, 623 (D.C. Cir. 1997) (citing *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C.

---

[4]      "The rationale for this rule derives from a commonsense understanding of the court's functional role in the administrative state[:] 'Were courts cavalierly to supplement the record, they would be tempted to second-guess agency decisions in the belief that they were better informed than the administrators empowered by Congress and appointed by the President.'" *Amfac Resorts, L.L.C. v. Dep't of Interior*, 143 F. Supp. 2d 7, 11 (D.D.C. 2001) (quoting *San Luis Obispo Mothers for Peace v. Nuclear Regulatory Comm'n*, 751 F.2d 1287, 1325-26 (D.C. Cir. 1986)).

Cir. 1984)).  As our court of appeals put it, for a court "to review *less* than the full administrative record might allow a party to withhold evidence unfavorable to its case," while "to review *more* than the information before the [agency] at the time [of its] decision risks our requiring administrators to be prescient or allowing them to take advantage of post hoc rationalizations." *Boswell*, 749 F.2d at 792 (emphasis added).

To ensure that the administrative record contains "neither more nor less" information than was before the agency, courts in this circuit have directed agencies to collect those materials "that were compiled by the agency that were before the agency at the time the decision was made." *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996); *Common Sense Salmon Recovery v. Evans*, 217 F. Supp.2d 17, 20 (D.D.C. 2002).  More specifically, the record must include all documents that the agency "directly or indirectly considered."  *Bar MK Ranches v. Yeutter*, 994 F.2d 735, 739 (10th Cir. 1993); *Amfac Resorts, L.L.C. v. Dep't of Interior*, 143 F. Supp.2d 7, 12 (D.D.C. 2001); *Novartis Pharms. v. Shalala*, 2000 WL 1769589, at *2 (D.D.C. Nov. 27, 2000); *Alaska Excursion Cruises v. United States*, 603 F. Supp. 541, 550 (D.D.C. 1984); *see also Pers. Watercraft Indus. Ass'n v. Dep't of Commerce*, 48 F.3d 540, 546 n.4 (D.C. Cir. 1995) (noting with approval that the "whole record" contained all materials "pertaining to the [challenged] regulation").

The agency may not skew the record in its favor by excluding pertinent but unfavorable information.  *Envtl. Def. Fund v. Blum*, 458 F. Supp. 650, 661 (D.D.C. 1978).  Nor may the agency exclude information on the grounds that it did not "rely" on the excluded information in its final decision.  *Ad Hoc Metals Coalition v. Whitman*, 227 F. Supp.2d 134, 139 (D.D.C. 2002); *Amfac Resorts*, 143 F. Supp.2d at 12.  On the other hand, an agency may exclude arguably

relevant information that is not contained in the agency's files but that may be available from third parties.  *Blum*, 458 F. Supp. at 661 n.4.  In addition, an agency generally may exclude material that reflects internal deliberations.  *Amfac Resorts*, 143 F. Supp. 2d at 13 (noting that deliberative intra-agency records ordinarily are privileged); *Seabulk Transmarine I, Inc. v. Dole*, 645 F. Supp. 96, 201 (D.D.C. 1986) (same).

Although an agency may not unilaterally determine what constitutes the administrative record, the agency enjoys a presumption that it properly designated the administrative record absent clear evidence to the contrary.  *Bar MK Ranches*, 994 F.2d at 739-40 (stating that the administrative record enjoys the same presumption of regularity afforded to other established administrative procedures); *Amfac Resorts*, 143 F. Supp. 2d at 12 (noting the "standard presumption" that the agency designated the administrative record properly); *Zeneca Inc. v. Shalala*, 1999 WL 728104 at *3 (D. Md. Aug. 11, 1999) (observing that the administrative record enjoys a presumption of regularity); *see also Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (stating that "[t]he task of the reviewing court is to apply the appropriate APA standard of review...based on *the record the agency presents* to the reviewing court") (emphasis added); *San Luis Obispo Mothers for Peace v. Nuclear Regulatory Comm'n*, 751 F.2d 1287, 1324 (D.C. Cir. 1986) (noting that "[i]n discharging their obligation to monitor agency action, courts review a record *compiled by the agency*").

### B.  The Court Grants the Plaintiffs' Motion to Supplement the Administrative Record With the Four Documents[5]

The plaintiffs allege that the FWS improperly excluded the four documents listed *supra* from the administrative record, and that the defendants should be required to supplement the administrative record.  Pls.' Mot. to Compel at 3.  Courts grant motions to supplement the administrative record only in exceptional cases.  *Fund for the Animals v. Williams*, 245 F. Supp. 2d 49, 58 (D.D.C. 2003); *see also Voyageurs Nat'l Park Ass'n v. Norton*, 381 F.3d 759, 766 (8th Cir. 2004).  The D.C. Circuit recognizes eight exceptions to the presumption against extra-record review.  *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989).  Extra-record review is appropriate where:

> (1) when agency action is not adequately explained in the record before the court;
> (2) when the agency failed to consider factors which are relevant to its final decision;
> (3) when an agency considered evidence which it failed to include in the record;
> (4) when a case is so complex that a court needs more evidence to enable it to understand the issues clearly;
> (5) in cases where evidence arising after the agency action shows whether the decision was correct or not;
> (6) in cases where agencies are sued for a failure to take action;
> (7) in cases arising under the National Environmental Policy Act; and
> (8) in cases where relief is at issue, especially at the preliminary injunction stage.

*Id. See also Lake Pilots Ass'n v. U.S. Coast Guard*, 257 F. Supp. 2d 148, 165 (D.D.C. 2003) (recognizing the same "eight exceptions to the general rule that review in an APA case is limited to the administrative record that was before the agency at the time the decision was rendered").

Before invoking an exception, however, the plaintiff must demonstrate bad faith or improper

---

[5]   This court has already concluded that the announcement of goals in the GPRA-mandated Strategic Plan is not a "final agency action" reviewable under the APA.  Mem. Op. at 9.  Therefore, the plaintiffs' argument that an administrative record pertaining to the creation of the Plan is necessary to guide the court's evaluation of the Plan is moot.

behavior on the part of the agency, or that, "the record is so bare that it prevents effective judicial

review." *Williams*, 245 F. Supp. 2d at 57-58 (citing *Commercial Drapery Contractors v. United

States*, 133 F.3d 1, 7 (D.C. Cir. 1998)).

### 1. The Defendants Excluded Information that was Relevant and Adverse from the Administrative Record

Supplementation of the record may be necessary when an agency excludes information

adverse to its position from the administrative record. *Public Citizen v. Heckler*, 653 F. Supp.

1229, 1237 (D.D.C. 1987) (citing *San Luis Obispo Mothers for Peace*, 751 F.2d at 1327 (D.C.

Cir. 1984). A plaintiff can make a *prima facie* showing that an agency excluded adverse

information from the record by proving that the documents at issue (1) were known to the agency

at the time it made its decision, (2) "are directly related to the decision," and (3) "are adverse to

the agency's decision." *Id.*

The plaintiffs in this case have made such a showing. First, the FWS knew of each of the

documents: three of them were created by the agency itself, and the fourth (the GAO report) "was

created with surveys from refuge managers and was provided to the agency after it was

completed" and is "located in the Service's own files." Pls.' Mot. to Compel at 28. Second, the

four documents contain information that is directly relevant to the promulgation of rules opening

refuges to hunting. The GAO Report describes the impact that secondary uses such as hunting

have on the refuges' wildlife and habitat preservation activities. *See Id.*, Attach. A, *passim*. The

1993 Draft EIS contains an environmental analysis of a proposed program to increase

recreational hunting and fishing on refuges nationwide. *See Id.*, Attach. B at 5, 7-15. The FWS's

*Biological Needs Assessment* stresses the importance of adopting a system-wide perspective

when deciding whether to create or expand hunting opportunities. *Id.*, Attach. C at 7. Finally, the Strategic Plan establishes the goal to increase recreational use of refuges and contains a strategy intended to guide the decisions of agency personnel at the national and individual refuge levels. *Id.*, Attach. D at 42, 45.

Third, the documents contain information adverse to the agency's decision to increase hunting opportunities at the refuges named in the six final rules. The documents suggest that increased hunting could have negative system-wide effects, some of them unknown, given the agency's lack of data. *See, e.g., Id.*, Attach. A at 32 (warning that, the "FWS lacks the data essential to make informed decisions concerning the impact of secondary uses on the limited resources available for refuge management and does not periodically reevaluate existing secondary uses as required by FWS policy"); *Id.*, Attach. B (describing system-wide adverse effects of increased hunting of game birds); *Id.*, Attach. C at 10 (warning that the agency's lack of relevant data leads the FWS to "intensively manipulate refuge habitats without knowing the full complement of resources affected"); *Id.*, Attach. D at 14-15 (noting that, although "migratory birds are excellent indicators of the overall health of an ecosystem," the FWS "does not have a firm understanding of the population status [of migratory birds] because of lack of sound scientific information").[6]

At times, an agency's assertion that it has produced the complete administrative records

---

[6]     The court notes this information not to evaluate the merits of the FWS's decision to promulgate the rules, but to acknowledge that there is relevant, adverse information that the defendants have excluded from the administrative record. *Asarco v. Envtl. Prot. Agency*, 616 F.2d 1153, 1159 (D.C. Cir. 1980) (stating that, in considering the possibility of extra record review, "the focus of judicial review is not on the wisdom of the agency's decision but on whether the process used by the agency considered all relevant factors").

will suffice to defeat the opposing party's objection.  *Williams*, 245 F. Supp. 2d at 57 n.7 (stating

that the defendant's administrative record enjoys a presumption of regularity).  Here, however,

the defendants cannot justify the exclusion of these highly relevant, adverse documents from the

administrative record simply by claiming that the documents were not "directly or indirectly

considered" by the agency.  Defs.' Reply at 17; *Blum*, 458 F. Supp. at 661 (warning that an

"agency may not, however, skew the 'record' for review in its favor by excluding from that

'record' information in its own files which has great pertinence to the proceeding in question").

## 2.  Supplementation is Appropriate to Determine Whether the Defendants Violated NEPA

Supplementation of the administrative record is warranted in challenges of the procedural

validity of an agency's action.  *Am. Forest & Paper Ass'n v. Envtl. Prot. Agency*, 1996 U.S. Dist.

LEXIS 13230 at *9 (D.D.C. Sept. 4, 1996) (citing *Esch*, 876 F.2d at 991).  NEPA "guarantees [a

plaintiff] a particular *procedure*, not necessarily a particular result."  *Ohio Forestry Ass'n v.*

*Sierra Club*, 523 U.S. 726, 737 (1998) (emphasis added).  The documents cited by the plaintiffs

discuss factors relevant to the six final rules promulgated by the FWS.  An evaluation of the

legitimacy of the agency decisions necessarily entails an examination of whether the FWS

considered these factors.[7]  *County of Suffolk v. Sec'y of Interior*, 562 F.2d 1368, 1384 (2d. Cir.

1977) (stating that, "in NEPA cases . . . a primary function of the court is to insure that the

information available to the decisionmaker includes an adequate discussion of environmental

effects and alternatives, which can sometimes be determined only by looking outside the

---

[7]        The defendants do not refute the plaintiffs' claim that the agency failed to consider the
cumulative and system-wide effects of recreational hunting and fishing.  The defendants merely state that
the documents in question were not "considered" by the individual refuge managers in making their
decisions and that therefore the documents "are not a part of the [administrative] record."  Defs.' Reply
at 17.

administrative record to see what the agency may have ignored").  The court therefore grants the plaintiffs' motion to supplement the administrative record with the four requested documents.

## IV.  CONCLUSION

For the foregoing reasons, the court grants the plaintiffs' motion to supplement the administrative record with the following documents: (1) *National Wildlife Refuges: Continuing Problems with Incompatible Uses Call for Bold Action*; (2) *Refuges 2003: A Plan for the Future*; (3) *Biological Needs Assessment: National Wildlife Refuge Division of Refuges*; and (4) the FWS *Strategic Plan 2000-2005*.  An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this 28th day of September, 2005.

RICARDO M. URBINA
United States District Judge